# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| JEREMY S. RUSSELL, | ) |
| Petitioner, | ) |
| vs. | ) Case No. 12-1504-CV-W-HFS-P |
| MICHAEL BOWERSOX, | ) |
| Respondent. | ) |

## OPINION AND ORDER DENYING WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY

Petitioner, a convicted state prisoner currently confined at the South Central Correctional Center in Licking, Missouri, has filed pro se a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2008 convictions and sentences for two counts of first-degree statutory rape and six counts of first-degree statutory sodomy, which were entered in the Circuit Court of Buchanan County, Missouri. Petitioner's conviction was affirmed on direct appeal (Respondent's Exhibit E), and the denial of his motion for post-conviction relief filed pursuant to Mo. Sup. Ct. R. 29.15 was upheld on appeal thereof (Respondent's Exhibit J). Petitioner raises seven (7) grounds for relief.[1] Respondent contends that Ground 1 is without merit; that Grounds 3, 4, and 5 are procedurally defaulted; and that Grounds 2 and 6 are partially procedurally defaulted and are without merit.

---

[1] Petitioner lists four grounds for relief in the body of his petition. Doc. No. 1, pp. 5-10. Petitioner then lists seven grounds for relief in an attachment to his petition titled "Grounds Raised," some of which overlap with the grounds listed in his petition and some which appear to assert additional grounds for relief. Doc. No. 1, pp. 16-19. In reply to respondent's response, petitioner clarifies that he is listing seven grounds for relief. Doc. No. 12. As a result, petitioner's grounds for relief will be numbered according to the grounds clarified in petitioner's reply.

# FACTUAL BACKGROUND

In affirming petitioner's convictions and sentences, the Missouri Court of Appeals, Western District, set forth the following facts:

> Russell and L.S. (mother) had a romantic relationship for eight years. During this relationship, they had three daughters whom they named K.R., H.R., and A.R. (the victims). In 2003, Russell and the victims' mother separated. The trial court awarded mother custody and awarded Russell visitation rights. During Russell's visitation with the victims, Russell touched the victims inappropriately and abused them sexually.
>
> In 2007, the victims disclosed the abuse to their mother's cousin, C.S. C.S. notified mother and mother then spoke to her children about the abuse. The victims told her that Russell had touched them inappropriately. The victims' mother took them to the hospital. The hospital notified the Department of Family Services and the police. Detective Trenny Wilson of the St. Joseph Police Department interviewed the victims at the Children's Advocacy Center on April 13, 2007. Joyce Estes, the director of the center, also interviewed the children about the abuse.
>
> The police arrested Russell, and the State charged him in its second amended information with two counts of statutory rape and six counts of statutory sodomy. Before trial, the State filed a motion to admit the victims' out-of-court statements at trial. The court held a hearing pursuant to section 491.075. At the end of the hearing, the trial court concluded that the victims' statements were reliable and ordered that the statements would be admissible at trial, as long as the victims testified.
>
> At trial, during the State's case in chief, only two of the victims, K.R. and H.R., testified. The State elicited testimony from their mother, Detective Wilson, C.S., and Joyce Estes that K.R. and H.R. told them that Russell abused them sexually. The State also called its expert, Linda Kerr, a pediatric nurse practitioner, who testified that a recent statistical study reflected that there was no physical evidence in approximately 96% of sexual abuse convictions. At the close of the evidence, the jury found Russell guilty of all eight counts. The trial court entered judgment against him . . . .

Respondent's Exhibit E, pp. 2-3.

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. Marshall v. Lonberger, 459 U.S.

2

Case 4:12-cv-01504-HFS   Document 13   Filed 05/06/13   Page 2 of 19

422, 432 (1983). Credibility determinations are left for the state court to decide. Graham v. Solem, 728 F.2d 1533, 1540 (8th Cir. en banc), cert. denied, 469 U.S. 842 (1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254 (e)(1).[2] Because the state court's findings of fact have fair support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

## **GROUND 1**

In Ground 1, petitioner claims that the trial court erred in admitting the hearsay statements of the victims because the statements were not sufficiently reliable under Mo. Rev. Stat. § 491.075 due to the number of inconsistencies in their statements and the repetitive and leading nature of the questions during the victims' interviews. Doc. No. 1, pp. 5, 16; Doc. No. 12, pp. 1-2. The Missouri Court of Appeals, Western District, denied Ground 1 as follows:

> At trial, K.R.'s and H.R.'s mother and C.S. testified that K.R. and H.R. told them that Russell had been touching their private areas. The State also introduced recordings of Detective Wilson's interviews with K.R. and H.R. in which K.R. and H.R. recounted Russell's acts of abuse. Finally, the State called Joyce Estes, the director of Children's Advocacy Center, who testified that K.R. and H.R. told her that Russell had abused them.
>
> This testimony was, of course, hearsay. Hearsay is any "out-of-court statement that is used to prove the truth of the matter asserted and that depends on the veracity of the statement for its value.'" State v. Hartman, 224 S.W.3d 642, 646 (Mo. App. S.D. 2007) (quoting State v. Sutherland, 939 S.W.2d 373, 376 (Mo. banc 1997)). Courts generally exclude hearsay, because the person who made the statement is not under oath, the other party does not have a chance to conduct cross-examination to test the veracity of the speaker's statement, and the jury is not able to judge the speaker's credibility and demeanor at the time he or she made the statement. Id. While hearsay is generally inadmissible, there are

---

[2] In a proceeding instituted by an application for writ of habeas corpus by a person in custody pursuant to a judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

3

certain exceptions that allow the trial court to admit hearsay statements when the circumstances assure the trustworthiness of the speaker's statement. Id.

Section 491.075 is a legislatively created exception for hearsay, which allows the trial court to admit a child's out-of-court statement in child sexual abuse cases when (1) the trial court finds that the statement is reliable and (2) the child testifies at the trial:

. . . .

Under section 491.075, the court uses a totality of the circumstances test to determine whether or not the child's out-of-court statement is sufficiently reliable to admit at trial. State v. Sprinkle, 122 S.W.3d 652, 661 (Mo. App. W.D. 2003). Under this test, the courts consider numerous non-exclusive factors including: (1) spontaneity and consistent repetition; (2) the child's mental state; (3) whether or not the child had a motive to fabricate the statement; (4) the child's knowledge of the subject matter of the statement; and (5) the lapse of time between when the sex acts occurred and when the child reported them. Id. We review the trial court's decision to admit an out-of-court statement pursuant to section 491.075 for an abuse of discretion. N.J.K. v. Juvenile Officer, 139 S.W.3d 250, 255 (Mo. App. W.D. 2004).

Russell first claims that the trial court failed to conduct an adequate review of the reliability of K.R.'s and H.R.'s statements because the trial court based its conclusion that their statement were reliable solely on the spontaneity and repetition of the statements. Russell is correct that, at the end of the hearing when the trial court ruled that the witnesses' testimony was admissible, the trial court focused on the spontaneity of K.R.'s and H.R.'s remarks and did not make specific findings on the other facts.

> The Court does find those statements were inherently reliable in the time and place and content in which they were uttered to the hearers, based upon the fact that the first two were given without prompting, basically. And then the other questions were open ended and not designed to elicit a specific response.

Russell, however, points to no law requiring the trial court to address each of the factors under the totality of the circumstances test. And, in fact, as we noted above, these factors are ***non-exclusive***. Sprinkle, 122 S.W.3d at 661. Thus, the trial court was under no obligation to consider or use each factor. State v. Brethold, 149 S.W.3d 906, 910 (Mo. App. E.D. 2004) (holding that the trial court is not required to identify which of the factors in the non-exclusive list that is used). Rather, the trial court's sole obligation was to make sure that K.R.'s and H.R.'s statements were sufficiently reliable. Sprinkle, 122 S.W.3d at 661. In doing so, the trial court was free to use the non-exclusive factors that we outlined

4

above or any other relevant factor. The trial court, however, was not required to take evidence on each factor and was not required to find that all of the factors favored admission of the evidence.

. . . .

Russell also claims in this point that the trial court abused its discretion in finding that K.R.'s and H.R.'s statements to the witnesses were reliable. Russell concedes that K.R.'s and H.R.'s statements to their mother and cousin were spontaneous but maintains that K.R.'s and H.R.'s statements to Detective Wilson and Joyce Estes were not spontaneous, because Wilson and Estes questioned them in the context of professional interview sessions, and the interview technique was designed solely to question K.R. and H.R. about the abuse.

In making the argument, Russell ignores case precedent holding that a victim's statement is not unreliable merely because the disclosure occurred during a professional interview. Sprinkle, 122 S.W.3d at 662 . . . . In fact, to find otherwise would mean that an interviewer's statement could not ever be admitted since the point of the interview is to discuss the abuse and is triggered by existing information indicating that abuse may have occurred. Rather, the real inquiry is whether or not the interviewer promoted, cajoled, or coaxed the victim's statement. State v. Gillard, 986 S.W.2d 194, 197 (Mo. App. S.D. 1999).

In that regard, a review of Detective Wilson's interviews with K.R. and H.R. establish [sic] that Wilson did not prompt the children's answers. Detective Wilson simply asked them if they had a secret. Although this question was so open-ended that it allowed K.R. and H.R. to respond in any manner, both children explained immediately that Russell had touched their "privates." Detective Wilson continued questioning K.R. and H.R. Wilson, however, was careful to make sure that she never suggested the appropriate answer. The victims were free to answer the questions in any manner that they chose. Thus, we conclude that Detective Wilson did not prompt or cajole K.R.'s and H.R.'s statements . . . .

This is true, even though, as Russell points out, many of Detective Wilson's questions were "multiple choice" questions. For example, Detective Wilson asked the children whether Russell touched them on their skin or on their clothing. These types of questions occurred only after K.R. and H.R. had disclosed the abuse. Furthermore, these types of questions do not suggest an answer. Both children were free to explain whether the touching occurred on their skin or through their clothing.

Similarly, at the hearing, Joyce Estes testified that she asked K.R. and H.R. if they understood why they were at the interviews, and both K.R. and H.R. said it was because Russell had touched them inappropriately. There is nothing in the record to suggest that Estes cajoled or coaxed these statements from K.R. and

5

H.R. Thus, we conclude that K.R.'s and H.R.'s statements to Estes were also spontaneous.

Russell also claims that K.R.'s and H.R.'s statements to the various witnesses were inconsistent. For example, he alleges that K.R. and H.R. contradicted themselves regarding where he touched them. Our prior cases have noted that it is common for children's accounts of abuse to contain some variations, contradictions, or lapses in memory. N.J.K. v. Juvenile Officer, 139 S.W.3d at 256-57. We have also held that inconsistencies or contradictions in statements by children regarding the abuse do not deprive the statements of all probative force. Id. at 257. Of course, there is also a difference between a victim making inconsistent statements and simply describing different details at different times. Id.

In that regard, the record does reveal that K.R. and H.R. revealed different details at different times. The record, however, establishes that K.R. and H.R. were consistent in their statements that Russell abused them. The inconsistencies identified are common with young victims describing such embarrassing matters and are insufficient to establish that K.R.'s and H.R.'s statements were unreliable.

. . .

In conclusion, the record at the hearing establishes that in the out-of-court questioning by their mother, Detective Wilson, C.S., and Estes, K.R. and H.R. consistently maintained that Russell touched them inappropriately. There is nothing on the face of the record to suggest that K.R. and H.R. falsified these statements. Thus, on this record, the trial court did not err in admitting K.R.'s and H.R.'s out-of-court hearsay statements. We deny Russell's first point.

Respondent's Exhibit E, pp. 3-10 (footnotes omitted).

State trial courts are afforded wide discretion with evidentiary rulings. "Questions regarding admissibility of evidence are matters of state law, and they are reviewed in federal habeas inquiries only to determine whether an alleged error infringes upon a specific constitutional protection or is so prejudicial as to be a denial of due process." Rousan v. Roper, 436 F.3d 951, 958 (8th Cir. 2006) (citation and internal quotations omitted), cert. denied, 549 U.S. 835 (2006); see also Bell-Bey v. Roper, 499 F.3d 752, 759 (8th Cir. 2007), cert. denied, 128 S. Ct. 2426 (2008).

6

"The exclusion [or admission] of [evidence] based on state evidentiary rules results in the denial of due process only if there was an impropriety so egregious that it made the entire proceeding fundamentally unfair." Skillicorn v. Luebbers, 475 F.3d 965, 972 (8th Cir. 2007) (citation omitted), cert. denied sub nom. Skillicorn v. Roper, 552 U.S. 923 (2007). "To meet this burden, a habeas petitioner must show that 'absent the alleged impropriety the verdict probably would have been different.'" Id. (quoting Anderson v. Goeke, 44 F.3d 675, 679 (8th Cir. 1995) (rehearing denied)).

Petitioner fails to meet this standard. The testimony provided by the state's witnesses[3] at the motion hearing reveals that the victims were consistent in stating that petitioner had touched their "private parts." See Respondent's Exhibit A, pp. 15, 40, 62, 64-67. Moreover, nothing in the record reveals that the witnesses prompted the victims during the interviews to state that petitioner had touched them inappropriately. For example, Detective Wilson testified that she asked open-ended questions and specifically stayed away from asking misleading questions. Respondent's Exhibit A, p. 49. Consequently, the record does not evince that the alleged errors were "so conspicuously bad that [they] fatally infected the trial and rendered it fundamentally unfair." Troupe v. Groose, 72 F.3d 75, 76 (8th Cir. 1995) (citing Anderson v. Goeke, 44 F.3d 675, 679 (8th Cir. 1995)).

The Missouri Court of Appeals, Western District, found that the trial court did not err in concluding that the victims' statements were reliable because the statements were spontaneous and not cajoled or coaxed, because, although there were inconsistencies in various details contained within their statements, inconsistencies are common for children who are victims of

---

[3] Because both victims and the witnesses testified at petitioner's trial and were available for cross-examination, the Confrontation Clause of the Sixth Amendment did not prohibit the admission of the challenged testimony. See Mosley v. Hurley, 2013 WL 1721607, *9 (E.D. Mo. Apr. 22, 2013).

abuse, and because the victims were consistent in stating that they were touched inappropriately by petitioner. Respondent's Exhibit E, pp. 3-10. Because the state court's determinations were not based upon "unreasonable determination[s] of the facts in light of the evidence" or misapplications of "clearly established Federal law," 28 U.S.C. § 2254(d)(1) and (2), Ground 1 will be denied.

## GROUND 2

In Ground 2, petitioner contends that Linda Kerr's testimony lacked a proper foundation and "improperly bolstered the lack of any physical evidence found at the SAFE examination." Doc. No. 1, p. 7. Doc. No. 1, pp. 7, 17; Doc. No. 12, pp. 3-7. Respondent contends that petitioner procedurally defaulted his claim that Kerr's testimony lacked a proper foundation because he did not object at trial. Doc. No. 8, p. 4. The Missouri Court of Appeals declined to review petitioner's claim of lack of proper foundation due to petitioner's failure to object at trial. Respondent's Exhibit E, pp. 10-12. Consequently, petitioner procedurally defaulted his claim that Kerr's testimony lacked a proper foundation. Sloan v. Delo, 54 F.3d 1371, 1381 (8th Cir. 1995), cert. denied, 516 U.S. 1056 (1996). Because petitioner does not argue cause and prejudice for his procedural default and fails to demonstrate that failure to consider this claim will result in a fundamental miscarriage of justice, petitioner's claim that Kerr's testimony lacked a proper foundation will be denied. Coleman v. Thompson, 501 U.S. 722, 750 (1991).

As to petitioner's allegation that it was improper for Kerr to testify as to the percentage of sexual abuse cases containing physical findings, the Missouri Court of Appeals, Western District, denied petitioner's claim as follows:

> In his next sub-point, Russell claims that the trial court erred in permitting Kerr to testify that, in most sexual abuse cases, there is no physical evidence of penetration. Russell argues that this testimony invaded the province of the jury.

8

Specifically, Russell claims that Kerr's testimony invaded the province of the jury because the jury has the sole responsibility to make credibility determinations. As we noted above, Russell objected to Kerr's testimony but did not object to it on the basis that her testimony invaded the province of the jury to make credibility determinations. We, therefore, review his claim for plain error.

. . . .

In child molestation cases, there are typically two types of expert testimony: generalized and particularized. State v. Churchill, 98 S.W.3d 536, 539 (Mo. banc 2003). An expert gives generalized testimony when he describes the general behaviors and characteristics commonly found in children who have been abused. Id. This type of evidence is admissible. Id. On the other hand, an expert gives particularized testimony when he gives testimony regarding the specific victim's credibility. Id. Well-established law provides that particularized testimony by an expert is inadmissible because it usurps the jury's province to determine the credibility of witnesses. Id. Thus, Russell must show that it is clear and evident from the record that Kerr gave particularized testimony on the victims' credibility and that this testimony resulted in a manifest injustice to him.

At trial, the State asked Kerr to state her opinion on whether or not there would always be physical evidence if an adult male penetrated a child's vagina. Kerr testified that the issue had been "studied extensively" and that "they took cases where a person was either found guilty or actually admitted to penetration of a child and in 96 percent of the cases . . . there were no physical findings."

Kerr's testimony that studies have shown that there are no physical findings in most sexual abuse convictions is nothing more than generalized testimony regarding the characteristics commonly found – or not found – in children who have been abused. Her testimony was admissible. See, e.g., State v. Link, 25 S.W.3d 136, 143 (Mo. banc 200) (police officer did not offer testimony regarding the witness's credibility when he explained general concept of false sightings) . . . . Furthermore, Kerr's testimony was not an explicit or implicit statement that she believed the victims or that she found sexual abuse victims generally credible. See State v. Collins, 163 S.W.3d 614, 620 (Mo. App. S.D. 2005). And, Russell points to no other place in the record where Kerr made any statement vouching for the victims' credibility. The trial court, therefore, did not err in failing *sua sponte* to strike Kerr's testimony.

In making his claim, Russell relies on State v. Foster, 244 S.W.3d 800 (Mo. App. S.D. 2008), for the proposition that Kerr improperly vouched for the victims when she testified that there is a lack of physical evidence in most sexual abuse cases. Russell misstates the precedent of Foster.

. . . .

9

> Our case is distinguishable. Russell is correct that both the expert in Foster and Kerr testified that there are no physical findings in approximately 95% of sexual abuse cases, and yet, in most of those cases, the victims had been abused. Russell, however, ignores the key distinction between the expert's testimony in Foster and Kerr's testimony in his case. In Foster, the expert testified that he knew that, even though there were no physical findings in 95% of the cases, the victims had been abused because he had interviewed them and believed their stories. Id. at 802. In that regard, the expert testified that he made a credibility determination that the victims were telling the truth. The expert in Foster then used that testimony to establish that he was an expert in determining whether or not the children were lying. Thus, when the expert testified that he believed the victim in Foster, the jury was likely to give undue weight to his testimony regarding the victim's credibility. The inadmissible testimony in Foster was not the expert's testimony that 95% of sexual abuse cases have no physical evidence even though the victims were abused. Rather, the inadmissible part of the expert's testimony was the fact that he arrived at that conclusion merely from his own belief that the victims were credible and then used that conclusion as a foundation to support his belief that the victim in the Foster case was credible.
>
> On the other hand, in this case, while Kerr did testify that there was no physical evidence in approximately 96% of the cases, she did not base her statement on her ability to determine the credibility of the victims. Rather, Kerr's conclusion was based on a study that had tracked the convictions of defendants in sexual abuse cases. Kerr also never testified that she was an expert in determining a victim's credibility, and she never testified that she believed these specific victims. Foster, therefore, is distinguishable from our case. Our review of the record, therefore, shows that the trial court did not commit a clear and evident error in failing *sua sponte* to exclude Kerr's testimony. Thus, Russell's second sub-point relating to Kerr's testimony is denied.

Respondent's Exhibit E, pp. 12-16.

As stated in Ground 1, the admissibility of evidence under state law is reviewed in federal habeas only insofar as to determine whether the alleged error was so egregious that it made the entire proceeding fundamentally unfair. Rousan, 436 F.3d at 958; Bell-Bey, 499 F.3d at 759; Skillicorn, 475 F.3d at 972. Petitioner fails to meet this standard. As noted by the Missouri Court of Appeals, Kerrr's testimony was not improper because it was based on a study tracking convictions in sexual abuse cases and because it did not concern whether Kerr was an expert on

10

the victim's credibility or whether she believed the specific victims. Respondent's Exhibit E, pp. 12-16. Because the state court's determinations were not based upon "unreasonable determination[s] of the facts in light of the evidence" or misapplications of "clearly established Federal law," 28 U.S.C. § 2254(d)(1) and (2), Ground 2 will be denied.

## GROUNDS 3, 4, AND 5

In Ground 3, petitioner argues that he was prejudiced when, during a recess at trial, petitioner was escorted in front of several jurors in the hallway while he was wearing restraints. Doc. No. 1, p. 8; Doc. No. 12, pp. 7-10. In Ground 4, petitioner alleges that he was prejudiced when a juror "disparged [sic] defense counsel on a personal matter" and when the court did not issue a corrective instruction. Doc. No. 1, pp. 10, 18; Doc. No. 12, pp. 9. In Ground 5, petitioner contends that the trial court erred in sustaining the state's objection to defense counsel's cross-examination of the victims' mother, which petitioner argues would have shown that the victims' mother "had a motive to convince [the victims] to falsely accuse [petitioner] of sexual abuse." Doc. No. 1, pp. 16-17; Doc. No. 12, pp. 10-11. Respondent contends that petitioner procedurally defaulted Grounds 3-5.

"A habeas petitioner is required to pursue all available avenues of relief in the state courts before the federal courts will consider a claim." Sloan, 54 F.3d at 1381. "If a petitioner fails to exhaust state remedies and the court to which he should have presented his claim would now find it procedurally barred, there is a procedural default." Id.

Petitioner procedurally defaulted Ground 3 by not asserting it on appeal from the denial of his post-conviction motion, Ground 4 by not asserting it on direct appeal, and Ground 5 by not

11

preserving it at trial.[4] See Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997)(recognizing that failure to present claims in the Missouri courts at any stage of direct appeal or post-conviction proceedings is a procedural default), cert. denied, 523 U.S. 1010 (1998). A federal court may not review procedurally defaulted claims "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750.

In reply, petitioner does not argue cause and prejudice for the procedural default of his claims. Doc. No. 12, pp. 7-11. Even if petitioner contends that the ineffective assistance of counsel caused him to procedurally default Grounds 3-5, petitioner fails to argue that counsel's actions amount to an independent constitutional violation. Evans v. Luebbers, 371 F.3d 438, 445 (8th Cir. 2004) (citing Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000) ("In order for ineffective assistance of counsel to itself be cause to excuse a procedural default, the ineffective assistance must rise to the level of an independent constitutional violation."). Moreover, a claim of ineffective assistance of post-conviction appellate counsel does not provide cause excusing procedural default. Arnold v. Dormire, 675 F.3d 1082, 1087 (8th Cir. 2012). Consequently, petitioner fails to establish cause and prejudice for the procedural default of Grounds 3-5.

Petitioner also has failed to show that a fundamental miscarriage of justice will result if his defaulted claims are not considered. See Abdi v. Hatch, 450 F.3d 334, 338 (8th Cir.) (petitioner must present new evidence that affirmatively demonstrates that he is actually innocent

---

[4] The Missouri Court of Appeals declined to review Ground 5 because petitioner's counsel "never asked mother whether or not she refused to permit the children to see him." Respondent's Exhibit E, p. 7 (footnote omitted). As a result, the state court stated that it was unable to "say that the trial court erred in excluding testimony the trial court never heard, whether in the form of an objection to a specific question or an offer of proof." Id.

12

of the crime for which he was convicted in order to fit within the fundamental miscarriage of justice exception), cert. denied, 549 U.S. 1036 (2006).

For the foregoing reasons, Grounds 3-5 will be denied.

## **GROUND 6**

In Ground 6, petitioner asserts a claim of prosecutorial misconduct in that, during closing argument, the prosecuting attorney "vaguely refered [sic] to two instances of prior uncharged crimes." Doc. No. 1, p. 18. Respondent contends that petitioner procedurally defaulted Ground 6 by failing to present it on direct appeal. Doc. No. 8, p. 8. In reply, petitioner contends that Ground 6 is intended as a claim of ineffective assistance of counsel for failing to object to the prosecution's statements during closing argument. Doc. No. 12, pp. 11-14. Because petitioner procedurally defaulted his prosecutorial misconduct claim in Ground 6 by failing to assert it on direct appeal and because petitioner states in his reply that Ground 6 is intended as the claim of ineffective assistance of trial counsel that he asserted in his post-conviction proceeding, this Court will address Ground 6 as a claim that of ineffective assistance of trial counsel for failing to object to the prosecution's closing argument.

The Missouri Court of Appeals, Western District, denied Ground 6 as follows:

> "Ineffective assistance of counsel is rarely found in cases where trial counsel had failed to object." Bradley v. State, 292 S.W.3d 561, 564 (Mo. App. E.D. 2009) (citing Williams v. State, 205 S.W.3d 300, 305 (Mo. App. W.D. 2006)). To establish ineffective assistance of counsel based on counsel's failure to object during closing argument. Russell "must show that his counsel's objections would have been upheld if made and that the failure to object resulted in a substantial deprivation of his right to a fair trial." Barnes v. State, 334 S.W.3d 717, 722 (Mo. App. E.D. 2011). Failing to make a non-meritorious objection is not ineffective assistance. Id. at 723. Additionally, the decision not to object is presumptively a matter of trial strategy and will not support an ineffective assistance of counsel claim unless Russell shows otherwise. Id.

13

During closing argument the prosecutor referred to his questioning of K.R.:

> When I was asking questions about the white house and she started talking about [A.R.]'s house and said there were bunk beds in the white house. So you saw that yourself. Something that I may have said triggered a different memory. And I said, I want to talk about the white house. Oh, okay. But you saw that happen yourself here in court. Something that I have said didn't relay the information that I want, but she thought she was answering the question that I asked. Again, her disclosure.

During rebuttal closing argument, the prosecutor argued, "The truth is that [Russell] did commit these heinous crimes on his daughters. Three on [K.R.], three different ones on [H.R.] and two on [A.R.]. Probably more than that, but that's what's charged." Russell contends that because of the prosecutor's improper statements, his questioning of K.R. may have "triggered a different memory" of abuse and, because it implied that Russell had "probably committed" more sexual offenses against his daughters, it is likely that the jury convicted Russell not for the offenses charged but for unpunished past crimes. Defense trial counsel did not object to either of these portions of the State's closing argument.

Russell failed to overcome the presumption that the decision not to object was reasonable trial strategy. At the evidentiary hearing, defense trial counsel was asked whether, when the prosecutor made these two arguments, he had any trial strategy for failing to object to them or for failing to ask to approach the bench and move for a mistrial. Defense trial counsel responded:

> It bordered on uncharged crimes, but it didn't exactly get to that point. It was just kind of skirting the uncharged crimes area. But I didn't think it was enough to raise the issue because she could have been—what specifically she was saying when she was talking outside this case, it was kind of a gray thing.

The motion court found that the challenged comments did not rise to the level of being objectionable and concluded that Russell did not meet his burden of proving that defense trial counsel's failure to object was ineffective assistance.

Vague or speculative references to the defendant's involvement in other crimes or other bad acts do not constitute evidence associating the defendant with other crimes. Davidson v. State, 308 S.W.3d 311, 318-19 (Mo. App. E.D. 2010); State v. Sheridan, 188 S.W.3d 55, 65 (Mo. App. E.D. 2006). In this case, the prosecutor did not argue that Russell committed other acts of sexual abuse on his children. To the contrary, the prosecutor's references in closing were vague and lacked any specific reference to any prior uncharged crimes. Therefore, any

14

Case 4:12-cv-01504-HFS   Document 13   Filed 05/06/13   Page 14 of 19

objections that Russell argues defense trial counsel should have made would not have been meritorious. Counsel cannot be deemed ineffective for failing to make a non-meritorious objection. Davidson, 308 S.W.3d at 319.

  Furthermore, Russell fails to demonstrate prejudice. We interpret the prosecutor's comments during closing argument in the context of the entire record rather than in isolation. State v. Petty, 967 S.W.2d 127, 136 (Mo. App. E.D. 1998). In reviewing the challenged comments in the context of three days of evidence, an hour of closing arguments (according to the motion court), and a 600-page transcript, we do not believe it was reasonably probable that the challenged comments substantially deprived Russell of a fair trial, particularly when comments were "isolated and brief, and [were] not emphasized by the prosecutor." State v. Rousan, 961 S.W.2d 831, 851 (Mo. banc 1998).

Respondent's Exhibit J, pp. 8-11 (footnote omitted).

  The Supreme Court has held that, in order for petitioner successfully to assert a claim for ineffective assistance of trial counsel, petitioner must demonstrate that his attorney's performance "fell below an objective standard of reasonableness" and that "the deficient performance" actually prejudiced him. Strickland v. Washington 466 U.S. 668, 687-88 (1984). This Court, moreover, may not grant habeas relief unless the state appellate court's decision "was contrary to, or an unreasonable application of, the standard articulated by the [United States] Supreme Court in Strickland." Owens v. Dormire, 198 F.3d 679, 681 (8th Cir. 1999), cert. denied, 530 U.S. 1265 (2000).

  "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 131 S. Ct. 770, 787 (2011) (quoting Strickland, 466 U.S. at 689). Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687.

  The Missouri Court of Appeals found that petitioner's counsel was not ineffective because an objection to the prosecutor's statements would have been without merit and because

15

the statements did not prejudice petitioner due to their brief and isolated nature. Respondent's Exhibit J, pp. 8-11. Because the state court's determinations were not based upon "unreasonable determination[s] of the facts in light of the evidence" or misapplications of "clearly established Federal law," 28 U.S.C. § 2254(d)(1) and (2), Ground 6 will be denied.

## GROUND 7

In Ground 7, petitioner asserts a claim of ineffective assistance of trial counsel in that counsel failed to object to Kerr's testimony for failing to identify the study upon which she relied when she testified that there are no physical findings in ninety-six percent of child sex abuse cases. Doc. No. 1, p. 19. The Missouri Court of Appeals, Western District, denied Ground 7 as follows:

> . . . . When asked whether, based on Kerr's experience and training, there would always be physical findings if a male penis penetrated a child's vaginal area, she responded, "No, not always," and proceeded to explain, "That's even been studied extensively where they did—they took cases where a person was either found guilty or actually admitted to penetration of a child and in 96 percent of the cases—."
>
> Defense counsel interrupted with an objection that "[t]his is not relevant. There's no foundation to support these studies and these tests are not—any expert testimony is not available, made available to the defense as papers or studies or anything that this would be able—."
>
> The trial court overruled counsel's objections on the grounds that the defense also endorsed Kerr as a witness. The prosecutor did not inquire further into the study mentioned by Kerr; instead, he asked Kerr about the speed with which the vaginal or anal area heals. During cross-examination, when the defense asked Kerr about whether a fingernail could cause scraping or cutting or cause tunneling of the vaginal area, leaving scar tissue, Kerr responded: "They've actually done a lot of studies about digital penetration and found that it causes no damage whatsoever."
>
> At the evidentiary hearing on Russell's Rule 29.15 amended motion, Russell's trial counsel ("defense trial counsel") testified that he interviewed Nurse Kerr prior to trial, reviewed her report of the SAFE examinations that she had conducted, and was aware from her report that she found no physical or forensic

16

findings of sexual abuse in the girls. Defense trial counsel testified that, during his investigation, he read two articles on the prevalence or absence of physical findings in child sex abuse cases. He recalled that he objected to Nurse Kerr's testimony that in ninety-six percent of child sex abuse cases there are no physical findings of abuse. He believed that by giving the jury a statistic, Nurse Kerr was trying to negate her findings of no physical signs of abuse in the girls. He explained that his focus at trial was to show that Nurse Kerr did not do the SAFE examinations correctly. When asked whether he had any trial strategy for failing to object to Nurse Kerr's statistical testimony as improper bolstering and lacking proper foundation or for not following up to find out where she got the statistic, defense counsel replied, "sometimes you don't want to highlight it . . . if you come up and ask a question about it, it's just going to reinforce it in their mind. If you just let it go, some of the people on the jury may not even have heard it." Defense trial counsel was then asked whether it would have been important to find out if Nurse Kerr was basing that statistic from a study that was generally accepted in the medical community, and he responded, "No, because I wouldn't want to highlight it."

Nurse Kerr testified at the evidentiary hearing that she had been testifying as an expert witness at Russell's trial when she stated that in ninety-six percent of the cases of child sexual abuse where the perpetrator was found guilty, there were no physical findings of sexual abuse. She testified that the statistic was from a study by Hager titled *Children Referred for Possible Sexual Abuse, Medical Findings in 2,384 Children* published in 2003 in the magazine CHILD ABUSE AND NEGLECT. Nurse Kerr considered the study to be "very quantifying" because of the number of children included in the study. When asked why she did not identify the study she relied on at trial, she responded: "Wasn't asked to. They asked me what the statistics were and I said what they were."

. . . .

Russell's argument that defense trial counsel was ineffective for failing to object to Nurse Kerr's statistical opinion testimony as lacking foundation ignores the fact that defense trial counsel actually interrupted that very testimony with an objection that "[t]his is not relevant. There's no foundation to support these studies and these tests are not—any expert testimony is not available, made available to the defense as papers or studies . . . ." We cannot conclude that defense trial counsel's failure to object *again* to the same testimony constituted ineffective assistance of counsel. "In arguing ineffectiveness [Russell] must overcome a strong presumption that counsel's performance was sound trial strategy." Dawson v. State, 315 S.W.3d 726, 734 (Mo. App. W.D. 2010) (internal quotation omitted) . . . . In this case, Russell cannot overcome the presumption that defense trial counsel's failure to object (again) was anything other than reasonable trial strategy. Defense trial counsel testified at the evidentiary hearing that he decided not to object further because he did not want to highlight Nurse

17

Kerr's testimony to the jury. Russell has failed to demonstrate that defense trial counsel's performance was deficient.

Russell has also failed to demonstrate prejudice. He has not alleged that an additional objection to Nurse Kerr's testimony regarding the foundation for her statistical opinion testimony would have been sustained. Given her ready response to the request to identify the study she relied on at the evidentiary hearing, it is highly unlikely that a reasserted objection to her testimony on foundational grounds would have been sustained. "Trial counsel is not ineffective for failing to make a meaningless objection." Id.

Respondent's Exhibit J, pp. 5-9.

In order for petitioner successfully to assert a claim for ineffective assistance of trial counsel, petitioner must demonstrate that his attorney's performance was objectively unreasonable and actually prejudiced petitioner. Strickland 466 U.S. at 687-88. The Missouri Court of Appeals found that petitioner's counsel was not ineffective because trial counsel had a reasonable trial strategy in not highlighting the statistic in Kerr's testimony and because the objection likely would have been without merit due to Kerr's ability at the evidentiary hearing to identify the study she relied on. Respondent's Exhibit P, pp. 13-14. Because the state court's determination was not based upon an "unreasonable determination of the facts in light of the evidence" or a misapplication of "clearly established Federal law," 28 U.S.C. § 2254(d)(1) and (2), Ground 7 will be denied.

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." Tennard v. Dretke, 542 U.S. 274, 276 (2004). Because petitioner has not met this standard, a certificate of appealability will be denied. See 28 U.S.C. § 2254, Rule 11(a).

18

Accordingly, it is **ORDERED** that:

(1) the petition for writ of habeas corpus is denied;

(2) the issuance of a certificate of appealability is denied; and

(3) this case is dismissed with prejudice.

                                                                      /s/ Howard F. Sachs_____
                                                                      HOWARD F. SACHS
                                                                       UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated:  May 6, 2013.